IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs September 22, 2004

## JAMES DAVID ALDER v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Franklin County**
**No. 12714    Buddy D. Perry, Judge**

––––––––––

**No. M2003-02767-CCA-R3-PC - Filed December 16, 2004**

––––––––––

The petitioner, James David Alder, was found guilty by a jury of aggravated assault, kidnapping, and unlawful possession of a weapon. As a result, he received an effective sentence of twenty (20) years as a multiple offender. The judgments were affirmed on appeal. See State v. James David Alder, No. M2000-01804-CCA-R3-CD, 2001 WL 1285945 (Tenn. Crim. App. at Nashville, Oct. 25, 2001). In this post-conviction proceeding, the petitioner alleges that for various reasons his trial counsel was ineffective. For the following reasons, we affirm the dismissal of the post-conviction petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Trial Court is Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which DAVID G. HAYES and THOMAS T. WOODALL, JJ., joined.

Mickey Hall, Winchester, Tennessee, for the appellant, James David Alder.

Paul G. Summers, Attorney General & Reporter; Richard H. Dunavant, Assistant Attorney General; J. Michael Taylor, District Attorney General; and Steve Strain, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

Factual Background

In the summer of 1998, the petitioner's then wife, Casey Alder (now Casey Davidson), left him. She spent a few days at the Sequatchie County home of the victim, Marie Austin. On July 16, 1998, after Ms. Davidson left the Austin residence to live with her mother, the petitioner came to the home of Ms. Austin, who was talking on the telephone at the time with a friend. Upon seeing the petitioner, Ms. Austin instructed her friend to call 911 if anything happened. The petitioner stuck his head inside the door asked where his wife was. When Ms. Austin told the petitioner his wife was

not present, he kicked the door open, entered, and put a shotgun up to the Ms. Austin's head threatening to kill her.

After hanging up the phone, Ms. Austin showed the petitioner a note that his wife had written. In it, Ms. Davidson stated that she was going to her mother's house. The petitioner pressed the shotgun against Ms. Austin's stomach and ordered her to telephone Ms. Davidson. When Ms. Davidson came to the phone, Ms. Austin asked her to come back to the victim's house. The petitioner held the shotgun to Ms. Austin's stomach during the phone call. Even though Ms. Davidson sensed that the petitioner was there and asked whether he had a gun, Ms. Austin never acknowledged the petitioner's armed presence. The petitioner told Ms. Austin that when his wife arrived he planned to shoot Ms. Austin so that his wife could watch her die. The petitioner said he also intended to shoot himself.

The police arrived after the petitioner had held Ms. Austin at gunpoint for approximately 25 to 30 minutes. An officer entered the house and Ms. Austin fled into the rear of the house where her young daughter was sleeping. The petitioner was subdued and the officer who entered the residence managed to wrestled the shotgun away from the petitioner and hand it to another officer. The shotgun proved to be loaded, and the officers found six more twelve-gauge shells in the petitioner's pocket.

The trial of the matter took place in Franklin County, where a jury convicted the petitioner of aggravated assault, kidnapping, and unlawful possession of a weapon. The trial court sentenced the petitioner to an effective sentence of twenty (20) years as a multiple offender.

This Court affirmed the petitioner's convictions on direct appeal. See State v. James David Alder, No. M2000-01804-CCA-R3-CD, 2001 WL 1285945 (Tenn. Crim. App. at Nashville, Oct. 25, 2001). The petitioner subsequently filed a pro se petition for post-conviction relief, alleging various inconsistencies at trial that he contended justified relief. The petitioner was appointed counsel and filed an amended petition for post-conviction relief alleging ineffective assistance of counsel at trial. A post-conviction evidentiary hearing was held on September 24, 2003.[1]

At the post-conviction hearing, the petitioner testified as to his version of the events and raised questions as to whether his trial attorney had adequately prepared for and made sound tactical decisions throughout the trial. The petitioner testified that he had been out hunting and entered Ms. Austin's residence to inquire about some of his belongings that were missing after his wife moved out. The petitioner admitted that an argument ensued, but he denied kidnapping Ms. Austin. The petitioner testified that his trial counsel convinced him not to testify on his own behalf. Along those same lines, the petitioner claimed that trial counsel failed to request a hearing in accordance with

---

[1]This hearing combined two post-conviction petitions, one relating to a later case involving the petitioner's conviction for attempted murder of the petitioner's wife, and this case. The decision to dismiss the post-conviction petition in the second case was affirmed by this Court on appeal. See James David Alder v. State, No. M2003-02766-CCA-R3-PC, 2004 WL 2309137 (Tenn. Crim. App. at Nashville, Oct. 13, 2004).

Tennessee Rule of Evidence 609 to determine whether the petitioner's prior convictions could be used to impeach his testimony. The petitioner also alleged that his trial counsel met with him only a few times and that each meeting was short. The petitioner stated that his trial counsel refused to present evidence of the petitioner's mental health problems and that trial counsel's cross-examination of witnesses was inadequate.

The State argued at the post-conviction hearing that trial counsel had provided effective counsel to the petitioner. The State contended that the petitioner's fate could have potentially been worse had the evidence of his mental history been introduced, or if he had testified on his own behalf. Trial counsel testified that he had been practicing law since 1986, criminal law exclusively since 1992, had participated in over 100 trials and was certified in Tennessee for appointment to capital cases. The State also introduced a letter written by the petitioner after his trial to his trial counsel, which stated:

> [Y]ou are a good lawyer. . . . I won't [sic] you to know that I am not mad at you cause [sic] you did a good job so thank you and take care and keep on doing good work you are doing and if I ever need a lawyer you would be the one I would won't [sic] to take my case.

At the conclusion of the hearing, the trial court dismissed the petition for post-conviction relief. On appeal, the petitioner challenges the trial court's dismissal of the petition.

## Post-Conviction Standard of Review

To sustain a petition for post-conviction relief, a defendant must prove his or her factual allegations by clear and convincing evidence at an evidentiary hearing. See Tenn. Code Ann. § 40-30-110(f); Momon v. State, 18 S.W.3d 152, 156 (Tenn. 1999). The post-conviction court's findings of fact are conclusive on appeal unless the evidence preponderates otherwise. See State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). During our review of the issue raised, we will afford those findings of fact the weight of a jury verdict, and this court is bound by the court's findings unless the evidence in the record preponderates against those findings. See Henley v. State, 960 S.W.2d 572, 578 (Tenn. 1997); Alley v. State, 958 S.W.2d 138, 147 (Tenn. Crim. App. 1997). This Court may not reweigh or re-evaluate the evidence, nor substitute its inferences for those drawn by the post-conviction court. See State v. Honeycutt, 54 S.W.3d 762, 766 (Tenn. 2001). All questions concerning the credibility of the witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved by the trial judge, not the appellate courts. See Momon, 18 S.W.3d at 156; Henley, 960 S.W.2d at 578-79. However, the post-conviction court's conclusions of law are reviewed under a purely de novo standard with no presumption of correctness. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001).

## Ineffective Assistance of Counsel

-3-

The petitioner argues that he was denied effective assistance of counsel. Both the Sixth Amendment to the United States Constitution and Article I, section 9 of the Tennessee Constitution guarantee a criminal defendant the right to representation by counsel. See Burns, 6 S.W.3d at 461; Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, the petitioner bears the burden of showing that (a) the services rendered by trial counsel were deficient and (b) that the deficient performance was prejudicial. See Powers v. State, 942 S.W.2d 551, 558 (Tenn. Crim. App. 1996). In order to demonstrate deficient performance, the petitioner must show that the services rendered or the advice given was below "the range of competence demanded of attorneys in criminal cases." Baxter, 523 S.W.2d at 936. In order to demonstrate prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. See Strickland v. Washington, 466 U.S. 668, 694 (1984). "Because a petitioner must establish both prongs of the test to prevail on a claim of ineffective assistance of counsel, failure to prove either deficient performance or resulting prejudice provides a sufficient basis to deny relief on the claim." Henley, 960 S.W.2d at 580.

As noted above, this Court will afford the post-conviction court's factual findings a presumption of correctness, rendering them conclusive on appeal unless the record preponderates against the court's findings. See id. at 578. However, our supreme court has "determined that issues of deficient performance by counsel and possible prejudice to the defense are mixed questions of law and fact . . . ; thus, [appellate] review of [these issues] is de novo" with no presumption of correctness. Burns, 6 S.W.3d at 461.

Furthermore, on claims of ineffective assistance of counsel, the petitioner is not entitled to the benefit of hindsight. See Adkins v. State, 911 S.W.2d 334, 347 (Tenn. 1994). This Court may not second-guess a reasonably-based trial strategy, and we cannot grant relief based on a sound, but unsuccessful, tactical decision made during the course of the proceedings. See id. However, such deference to the tactical decisions of counsel applies only if counsel makes those decisions after adequate preparation for the case. See Cooper v. State, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

On appeal, the petitioner complains that his trial counsel was ineffective because he failed to: (1) adequately prepare a defense by meeting with the petitioner only a handful of times; (2) ensure that the petitioner's version of events and his history of mental illness was introduced as promised during opening statements; (3) allow the petitioner to testify by convincing him that he should not testify; (4) ensure that the trial court held a hearing in accordance with Tennessee Rule of Evidence 609 to determine if the petitioner's previous convictions could be used to impeach his testimony; (5) adequately cross-examine witnesses regarding discrepancies in their testimony; and (6) provide proof of the history of petitioner's mental illness. The State counters that the record supports the trial court's conclusion that the trial counsel provided effective representation.

Inadequate preparation

The petitioner asserted at the post-conviction hearing that his trial attorney met with him at the jail a few times in the booking room prior to trial. He further claimed that the meetings were short and were not focused on developing a defense. The petitioner claimed that he intended to hire his own attorney, but "didn't have time" and, the day of trial "was told . . . [he] couldn't" by the judge. However, other evidence reveals that trial counsel or colleagues from his office met with or telephoned the petitioner no less than fourteen times to discuss his two ongoing criminal cases. The petitioner met with both trial counsel, another attorney from the Public Defender's Office and an investigator concerning the facts of the case and possible defenses. The defense team also obtained and reviewed the petitioner's mental health records. The trial court concluded that trial counsel's preparation was more than adequate stating, "I don't see how in this case any additional meetings or longer meetings would have made any difference in regard to the case."

The petitioner argues in his brief that the Tennessee Supreme Court set forth a three-part "standard of preparation" in Baxter v. Rose, 523 W.S.2d at 930, of which the petitioner's trial counsel failed to meet the first part: "Counsel should confer with his client without delay and as often as necessary. . . ." Id. at 932-33. The petitioner made this same argument in his post-conviction appeal from the attempted second degree murder conviction. This Court discounted the petitioner's argument therein, stating:

> [W]e do not see this partial quote from Baxter as the controlling standard. Rather, the clear standard in Tennessee for ineffective assistance of counsel, including claims of inadequate preparation, is the two part deficiency and prejudice standard of Strickland, 466 U.S. at 687, and Burns, 6. S.W.3d at 461.

Alder, 2004 WL 2309137, at *3. The same analysis applies herein. After applying an objective standard of reasonableness, we conclude that there was no deficient representation based on the evidence presented as to the quantity and quality of attorney/client meetings. Moreover, we agree with the trial court that the petitioner was in no way prejudiced by the number or length of the attorney-client meetings. Thus, we determine that the petitioner failed to prove by clear and convincing evidence that his trial attorney provided ineffective assistance of counsel due to inadequate trial preparation.

Persuasion of Petitioner Not to Testify

The petitioner next argues that because trial counsel failed to call him to testify on his own behalf, trial counsel's representation was ineffective. The petitioner maintains that only he could present his version of what happened during the time he was in the victim's residence. The petitioner testified that only he could give an account of his relationship with the victim and that his testimony would refute the proof offered by the State.

The State noted that the petitioner testified before the trial court regarding his decision not to testify and essentially assured the court that his decision was voluntary. The State also presented testimony that trial counsel never coerced the petitioner not to testify, but rather advised him that

doing so would likely do more harm than good considering the circumstances. The evidence reveals that had the petitioner testified, it would have likely opened the door to his impeachment through prior convictions of burglary and aggravated burglary.[2] Furthermore, trial counsel testified that he was concerned about the possibility of the petitioner's testimony concerning drug use,[3] prior convictions, and his generally "obtuse" demeanor.

The trial court agreed with the State that trial counsel's tactical decision to advise his client not to take the witness stand was based on sound judgment, stating:

> You know, that certainly gets down to credibility but I think I can draw the conclusions, having tried these cases, that the jury would have almost out of hand rejected his credibility . . . .

Both the State and the petitioner rely on State v. Zimmermen, 823 S.W.2d 220, 227 (Tenn. Crim. App. 1991), which stated in part, "the failure of a defense attorney to call the defendant is often a key factor on the issue of ineffective assistance." While we agree with that statement of the law in Zimmerman, we agree with the State that the facts in Zimmerman are distinguishable from the case herein. In Zimmerman, the defense counsel planned a defense where the defendant would testify, informed the jury to such a strategy, then failed to actually call the defendant to the stand. This Court found defense counsel's representation in Zimmerman ineffective based on his "peremptory abandonment of the pre-established and reasonably sound defense strategy. . . ." 823 S.W.2d at 224. In the case herein, trial counsel advised the petitioner from the outset not to take the stand as a trial strategy. Trial counsel's decision does not amount to deficient representation. Further, the petitioner failed to demonstrate that prejudice resulted from trial counsel's advice.

## Promise of Defense in Opening Statement

The petitioner also claims that trial counsel made promises to the jury during opening statements that they would hear the petitioner's version of the events and that the defense would present an insanity defense and that trial counsel was ineffective for failing to present such evidence as promised. The State argues that the petitioner was not prejudiced by trial counsel's actions.

---

[2]In a related argument, the petitioner claims that trial counsel failed to have a hearing in accordance with Tennessee Rule of Evidence 609 to determine the admissibility of the petitioner's prior convictions for impeachment purposes. At the post-conviction hearing, trial counsel admitted that he did not remember why there was no such hearing held but that he was unaware of how he could exclude the burglary and aggravated burglary convictions if the petitioner testified. The transcript of the trial indicates that trial counsel discussed the possibility of a Tennessee Rule of Evidence 609 hearing, but that the trial court wanted to wait to have the hearing until the petitioner decided whether he was going to testify at trial. Presumably, once the petitioner decided not to testify, no hearing was necessary.

[3]In fact, the petitioner testified at the post-conviction hearing that he was prepared to tell the jury that he and the victim "smoked a joint" the day of the incident.

The record reveals that during opening statements, trial counsel informed the jury that "there may be some proof coming out" that, on the day of the incident, the petitioner had been hunting for a snake to make a belt, that he stopped by the victim's residence, and that an argument developed when the petitioner saw some of his possessions at the residence. Trial counsel also told the jury that some of the State's witnesses would testify to the petitioner's bizarre behavior, that the petitioner attempted suicide in jail, that the petitioner was taken to "Mocassin Bend," and that the petitioner was not taking his medication at the time of the incident.

In support of his argument that trial counsel's statements amounted to ineffective assistance of counsel, the petitioner again relies on Zimmerman. The petitioner claims that he was prejudiced by trial counsel's failure to provide the "promised defenses" to the jury. Again, this case is distinguishable from Zimmerman. In Zimmerman, defense counsel promised in opening statements that the defendant would testify and that a mental health professional would testify favorably for the defense. 823 S.W.2d at 221-22. Even though neither the defendant nor the mental health professional ultimately testified, this Court did not proclaim that such action in and of itself was sufficient for granting a new trial but rather part of a larger course of conduct that necessitated a new trial. Id. at 226-28. In the case herein, trial counsel did not promise witnesses that did not appear. In fact, trial counsel was able to introduce much of what he promised to the jury during opening statements through the cross-examination of the State's witnesses. The post-conviction court concluded that trial counsel's statements were a "lawyering issue" and the facts presented a situation where "stirring the mix" might well be the best strategy. The petitioner has failed to prove through clear and convincing evidence that trial counsel's actions rose to the level of deficient representation or prejudiced the petitioner.

Inadequate Cross-examination of Witnesses

Next, the petitioner claims that trial counsel failed to properly cross-examine the testimony of one of the key witnesses, Officer Lockhart. Specifically, the petitioner argues that trial counsel failed to point out that there were discrepancies between Officer Lockhart's preliminary hearing testimony and trial testimony. The evidence at trial reveals that Officer Lockhart testified that upon his arrival to the victim's residence, he saw two people inside. Officer Lockhart then testified that he burst through the door without knocking and saved the victim. The petitioner claims that Officer Lockhart testified at the preliminary hearing that he knocked on the door prior to entering the victim's residence and that Officer Lockhart's preliminary hearing testimony was consistent with the petitioner's version of the events.

Initially, we note that there is no transcript from the preliminary hearing in the record on appeal. It is the duty of the petitioner to prepare an adequate record for appellate review. Tenn. R. App. P. 24(b). "When a party seeks appellate review there is a duty to prepare a record which conveys a fair, accurate and complete account of what transpired with respect to the issues forming the basis of the appeal." State v. Ballard, 855 S.W.2d 557, 560 (Tenn. 1993). Further, the petitioner has failed to cite authority in support of this argument. See Tenn. R. App. R. 27(a)(7); Tenn. Ct. Crim. App. R. 10(b). This issue is waived.

History of Mental Illness

The petitioner next asserts that trial counsel was deficient in that he failed to further investigate and utilize a mental condition defense at trial. The evidence shows that during opening statements at the trial, trial counsel raised the issue of the petitioner's mental health problems. During closing arguments, the State reminded the jury that the defense had presented no evidence in support of the alleged mental illness. During his testimony at the post-conviction hearing, the petitioner claimed that he repeatedly asked trial counsel to inform the jury of his history of mental illness. The petitioner claimed that he suffered from mental illness since "the middle '70s" and had a record of "suicide attempts, overdoses, and stuff like that." There is evidence in the record indicating that the petitioner has had contact with mental health professionals sporadically since 1992.

At the post-conviction hearing, the State presented evidence that the petitioner's medical records did not support a claim of mental illness that would have amounted to a defense to his actions. The State pointed out that the petitioner had an in-patient mental health evaluation after his arrest and was declared competent to stand trial. Trial counsel claimed that he thoroughly reviewed the petitioner's medical records and made the tactical decision not to introduce them at trial. Trial counsel felt that even though some of the information regarding the petitioner's mental condition would have been favorable, the records also contained information which would have been detrimental to the petitioner's case. In particular, trial counsel was concerned about the multiple references to the source of the petitioner's mental health problems as poly-substance abuse, anti-social behavior and "malingering" mental illness. The mental health records also would have revealed the petitioner's habitual drug use to the jury. The petitioner was first diagnosed with mental illness in 1992, but that diagnosis was attributed to malingering. The petitioner had two suicide attempts, both occurring while he was in jail for other crimes. The petitioner had also threatened his wife with a knife in 1998.

The post-conviction court determined that the evidence of the petitioner's mental health was more detrimental to his defense than helpful, stating:

> [H]e's complaining that his mental health was not called to the attention of the jury, because no doctors were called to provide that. Well, I think the record speaks for itself on that issue. I think the detriment, if you go back to this standard of whether the deficiency would prejudice the defense, certainly no prejudice by not doing that in this particular case. In fact, it probably benefits him that that proof was not offered.

On appeal, the petitioner claims that trial counsel was ineffective because he meets at least two prongs of the three-prong guideline suggested by this Court in Wilcoxson v. State, 22 S.W.3d 289 (Tenn. Crim. App. 1999), which states:

Where counsel (1) makes some exploration of the mental history of the appellant but fails to take an obvious and easily available step which would have made such a defense viable, (2) does not produce reasonable tactical reasons for not pursuing further investigation, and (3) raises no other plausible defense, courts may find ineffective assistance of counsel.

Id. at 315 (citing Smith v. State, No. 02C01-9801-CR-00018, 1998 WL 899362, at *22 (Tenn. Crim. App. at Nashville, Dec. 28, 1998)) (holding counsel's failure to raise issue of defendant's claim of diminished capacity was not ineffective assistance of counsel). However, we determine that the petitioner failed to prove by clear and convincing evidence that trial counsel failed to meet any of the Wilcoxson requirements. The record shows that trial counsel thoroughly investigated the petitioner's mental history and concluded after that review that introducing those records would not be beneficial to the petitioner. The petitioner's mental health diagnoses of malingering, poly-substance abuse, and anti-social behavior would not have been particularly beneficial to his defense. We conclude that the petitioner has failed to demonstrate that trial counsel's failure to present additional evidence of the petitioner's mental history either rose to the level of deficient representation or prejudiced the petitioner.

Conclusion

The post-conviction court individually addressed each of the petitioner's complaints with the representation and found that none of them had merit, ultimately determining that trial counsel provided constitutionally adequate representation. The record fully supports that finding. Accordingly, we affirm the judgment of the post-conviction court.

_____
JERRY L. SMITH, JUDGE